UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 3:18-CR-031 JD |
| | ) |
| DONYEA FOWLER | ) |

## OPINION AND ORDER

Defendant Donyea Fowler is charged with six robbery counts, six § 924(c) counts, and one felon in possession count. He was arrested on a warrant after officers spotted him get into a car. Upon approaching the car, officers viewed evidence of recent robberies in the car, in which Mr. Fowler was the named suspect. After seizing the car and securing a search warrant, a search of the car's trunk revealed gloves and a blue satchel containing a .380 caliber semi-automatic handgun with a chrome-colored slide matching those used during the robberies. Mr. Fowler has now moved to suppress the evidence, arguing that the stop and search of the car was unlawful. For the following reasons, the Court denies the motion.

### I. FACTUAL BACKGROUND

In this district, armed robberies took place on: December 14, 2017, at the Mega Liquor store; January 17, 2018, at the Blarney Stone liquor store; January 30, 2018, at the BP Gas Station; February 9, 2018, at the Blarney Stone liquor store; February 21, 2018, at the Blarney Stone liquor store; and in the early morning hours of February 23, 2018, at the BP Gas Station. A break in the investigation occurred when a lottery ticket stolen during the December 14th robbery was discovered to have been cashed in at a 7-Eleven store approximately eight minutes after that robbery, but not within walking distance of the robbed Mega Liquor store. Detective Devon Gilbert of the South Bend Police Department was able to obtain surveillance images of

the person cashing in the winning ticket. On the video, Detective Gilbert observed the unmasked suspect exit a car from the front passenger side and enter a 7-Eleven to redeem the ticket.

From Detective Gilbert's review of the surveillance videos of the robberies (with only the first robbery's video being of poor quality), it became clear that the same person was committing the crimes given the similarity of the suspect's clothing and modus operandi. Specifically, the robber wore very distinct maroon jogging pants, a face mask, and mismatched gloves in all six of the robberies, white shoes in five of the robberies, and a black hoodie at first and then a grey hoodie in later robberies.[1] Moreover, the robber carried a similar chrome semi-automatic gun in all six of the robberies, and after the third robbery he started carrying a blue satchel with a distinct emblem on it. The robber was also consistently stealing the same items: cash, alcohol, lottery tickets, Newport cigarettes, and Swisher Sweets cigarillos; and, he even became increasingly confident with each robbery. It appeared that the robber consistently used a car, given the location of the robberies, the discovery of tire tracks and footprints in the snow, and the review of video surveillance from the first robbery revealing a dark-colored, four-door sedan from which the suspect exited and later re-entered.

Using a photo of the suspect from the 7-Eleven surveillance video, police reached out to the community to identify the suspected robber. After several tips confirmed Mr. Fowler's identity, Detective Gilbert compared Mr. Fowler's BMV photo, booking photos, and social media pictures to verify that they matched the suspect as being Mr. Fowler. To locate Mr. Fowler, police obtained a warrant (the validity of which is uncontested) to track the location of Mr. Fowler's cell phone through "fairly accurate" GPS tracking methods.

---

[1] *See* Government's Exhibit 2.

On the afternoon of February 23, 2018, information (or "pinging") from the GPS tracking device indicated that Mr. Fowler's phone was near an address on South Bend Avenue. Lieutenant Kyle Dombrowski of the South Bend Police Department's Strategic Focus Unit and other officers set up surveillance in this area to find Mr. Fowler—known by the officers as a suspect in the six recent armed robberies and for having an unrelated and active felony arrest warrant. While monitoring the area, officers saw someone they believed to be Mr. Fowler enter a black car around South Bend Avenue.[2] The cellphone "ping" then began to move consistent with the movement of the car. After tailing the car, Lieutenant Dombrowski performed a traffic stop of the car for speeding (although the driver wasn't advised of the reason for the stop nor given a ticket).

As Lieutenant Dombrowski and other uniformed officers approached the car with guns drawn (due to the "high risk" nature of the situation), he and South Bend Police Officer Andrew Hines clearly saw Mr. Fowler through the backseat window. As a result, officers commanded Mr. Fowler to show his hands. Rather than obey the show of force, Mr. Fowler was noncompliant and had to be physically removed from the car. Mr. Fowler then resisted arrest, but officers were able to take him to the ground and detain him in handcuffs. Mr. Fowler was clutching something in his left hand which was confiscated and field tested positive for marijuana. A pat-down of his person also revealed approximately six-hundred dollars in cash and cocaine in his pockets. While standing outside of the car, officers viewed Newport cigarettes and Swisher Sweets cigarillos on the back seat of the car, which Detectives Dombrowski and Gilbert

---

[2] *See* Government's Exhibit 1.

suspected were proceeds from the robberies.[3] In the panel of the door, officers also viewed Grey Goose Vodka which was known to have been taken during the robberies.

Police impounded the car and had it towed to the South Bend Police Department's secured garage while they obtained a search warrant. The driver was identified as Sanjuana Tijerina, who indicated that she had rented the car in her name alone for a weekend trip to Ohio. She planned to go with Darnell Williams, who was found to be the front seat passenger during the stop. Darnell had invited his cousin, Mr. Fowler. Prior to leaving on the trip, she knew that both men had placed bags in the trunk, as had she. And after officers pulled her over, she didn't feel free to leave and she didn't consent to their taking her rental car.

After securing a search warrant, a search of the car's trunk revealed gloves and a blue satchel containing a .380 caliber semi-automatic handgun with a chrome-colored slide matching those used during the robberies. Also recovered were coins, alcohol, Newport cigarettes, and Swisher Sweets cigarillos.

Mr. Fowler moves to suppress the evidence recovered through the search of the trunk premised solely on the alleged illegality of the car's search and seizure.[4] For the reasons

---

[3] *See* Government's Exhibits 1 and 3.
[4] Fowler's motion also made a passing reference indicating that the search warrant's affidavit may have been premised on false statements. When asked to clarify the basis for this undeveloped argument, defense counsel explained that the warrant's application mentioned that the robber wore the same clothes in all the robberies, when, in fact, his clothes varied. Although the Court deems this argument waived as insufficiently developed, *see United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991), *cert. denied*, it would note that the affidavit actually mentioned that Mr. Fowler "used the same items of clothing in all of the robberies." *See* Defendant's Exhibit B at p. 3. Thus, this technically isn't a false statement; and even if it were, it wouldn't undermine the probable cause finding given the affidavit's identification of Mr. Fowler through Crime Stoppers tips (after he cashed in the winning ticket taken during the first robbery), the uniqueness of the items stolen and reported by Darnell to be in the car, and the large amount of cash found on Mr. Fowler shortly after a robbery had occurred that same day. *See Franks v. Delaware*, 438 U.S. 154, 171-72 (1978) (holding that suppression is not warranted "if, when

discussed below, the Court finds that the stop and search of the car were based on sufficient probable cause.

## II. DISCUSSION

The Fourth Amendment applies to seizures of the person, including brief investigatory stops such as the stop of the vehicle here. *Terry v. Ohio*, 392 U.S. 1, 16–19 (1968). Little authority is required to support the conclusion that police may conduct a traffic stop for the purpose of executing an arrest warrant for someone in the car. *See United States v. Cortez,* 449 U.S. 411, 417 n.2 (1981) ("Of course, an officer may stop and question a person if there are reasonable grounds to believe that person is wanted for past criminal conduct."); *United States v. Rosario*, 305 Fed. Appx. 882, 885 (3rd Cir. 2009) ("[T]he Government established probable cause to stop the vehicle to execute the . . . arrest warrant."); *United States v. Shields*, 519 F.3d 836, 837 (8th Cir. 2008); *United States v. Helton*, 232 Fed. Appx. 747, 749 (10th Cir. 2007) (the traffic stop was a reasonable investigative stop for purposes of executing an arrest warrant, even though the passenger in the car turned out not to be the subject of the warrant). The question is whether the arresting officers had a good faith, reasonable belief that the arrestee was the subject of the warrant. *See Hill v. California*, 401 U.S. 797, 804 (1971) ("[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time."); *accord United States v. Marshall*, 79 F.3d 68, 69 (7th Cir. 1996) ("[T]he arrest is constitutional if the arresting officers (1) have probable cause to arrest the person sought and (2) reasonably believe that the person arrested is the person sought.").

---

material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause.").

5

Even absent an active arrest warrant, an investigatory stop not amounting to an arrest is authorized if the officer making the stop is "able to point to specific and articulable facts" that give rise to a reasonable suspicion of criminal activity. *United States v. Tilmon*, 19 F.3d 1221, 1224 (7th Cir. 1994). However, to make an arrest without a warrant, probable cause is required. *United States v. Tilmon*, 19 F.3d 1221, 1228 (7th Cir. 1994). Probable cause to arrest exists when a reasonably cautious and prudent person would be justified in believing that the individual to be arrested had committed, was committing or was about to commit a crime. *Id*.

In this case, the known active arrest warrant and status as a suspected serial robber gave the police probable cause for stopping the vehicle at gunpoint and arresting Mr. Fowler. The facts reveal that an ongoing investigation by law enforcement led police to the conclusion that the same person had committed the six robberies and had access to a dark-colored vehicle driven by an accomplice. Police used an image of the suspect cashing in the stolen winning ticket at the 7-Eleven to obtain the public's help in identifying the culprit. After receiving several responses that identified Mr. Fowler as the robber, police didn't stop there; rather, officers used a BMV photo, booking photos, and social media pictures to familiarize themselves with Mr. Fowler's appearance. Thereafter, active "pings" from a phone believed to be Mr. Fowler's cell phone led officers to a fairly precise location, where they personally observed him enter a black four-door car. Once the car moved, the "pings" did too. After the car was stopped by officers, they saw Mr. Fowler through the window of the car (as supported by their unequivocal testimony). Mr. Fowler was believed to be armed and dangerous given that the most recent armed robbery had taken place earlier that very day.

Because Mr. Fowler had a valid warrant for his arrest, he had no right to be at large and he suffered no infringement of his rights when he was apprehended based on the officers'

reasonable belief that Mr. Fowler was in the car. *See, e.g., Atkins v. City of Chicago*, 631 F.3d 823, 827 (7th Cir. 2011) (a passenger in a car stopped without probable cause had no basis to complain because the police, it turned out, had a warrant for his arrest); *Banks v. Fuentes*, 545 F. App'x 518, 521 (7th Cir. 2013) (noting that like a warrant, the investigative alert authorized Banks's arrest because other officers already had made a determination of probable cause); *United States v. Copeland*, 44 F. App'x 740, 743 (7th Cir. 2002).

Moreover, even absent a valid arrest warrant, the evidence was sufficient to tie Mr. Fowler to the robberies and his being in the car, so as to support the officers' actions in stopping the car, approaching it with guns drawn, and arresting Mr. Fowler. *See United States v. Douglas*, 55 F. App'x 769, 770 (7th Cir. 2003) (noting that under the "automobile exception" to the Fourth Amendment's warrant requirement, police officers may stop and search cars without a warrant when they have probable cause to believe that the vehicle contains contraband or evidence of a crime.). The valid stop then placed officers near the car, if not within it, given Mr. Fowler's active resistance and need to be physically removed from the car. Thus, for some time during Mr. Fowler's resistance, officers saw the unique robbery proceeds—particularly the Newport cigarettes, Swisher Sweets cigarillos, and Grey Goose Vodka—in plain view in the back seat of the car. *See Shields*, 519 F.3d at 837.

The particular facts of this case establish that the police had probable cause to believe that the car contained evidence from the recent robberies, which allowed them to search that car even without first obtaining a warrant. *United States v. Charles*, 801 F.3d 855, 860 (7th Cir. 2015) (citations omitted). The authority to search encompassed any area of the vehicle where evidence of the crime might be found. *United States v. Zahursky*, 580 F.3d 515, 523 (7th Cir. 2009) ("Where law enforcement agents have probable cause to search a vehicle, they may search

all areas in the vehicle in which contraband or evidence of criminal activity might be found, including closed containers, packages, compartments, and trunks."). Here, it was reasonable for officers to believe that the trunk could hold the blue satchel, clothing, mask, and gloves used during the robberies, as well as the gun and robbery proceeds (Newport cigarettes, Swisher Sweets cigarillos, alcohol, lottery tickets, and cash). *See id.* (finding that the agents could lawfully search the glove compartment and trunk where it was reasonable to believe that condoms might be found in the coin purse and clothes in the duffel bag; thus, upon finding the purse and bag, the agents could lawfully search those items as well). Because there was probable cause to search the contents of the car and trunk immediately, Fowler cannot successfully claim that his Fourth Amendment rights were violated when the car was seized to preserve the evidence while a search warrant was obtained. *See, e.g., United States v. Etchin*, 614 F.3d 726, 735 (7th Cir. 2010) (officers may have probable cause to support a search warrant and thus a seizure of the premises under *Segura* (that is, they may act to secure the premises and occupants and wait for the warrant before searching), but there is no emergency requiring immediate entry).

Up until now, the Court has assumed for purposes of discussing the legality of the search that Mr. Fowler has standing[5] to object to an unlawful search of the car. But Mr. Fowler cannot move to suppress evidence seized in an illegal search unless he had a legitimate expectation of privacy in the area searched. *See United States v. Torres*, 32 F.3d 225, 230 (7th Cir. 1994). This includes both subjective and objective requirements, meaning the defendant must actually hold an expectation of privacy, and it must be one that society recognizes as legitimate and

---

[5] As used in this context, the term "standing" has a different meaning than when used in the jurisdictional context; it refers to a substantive component of the Fourth Amendment analysis that requires a defendant to show that his own Fourth Amendment rights were violated. *Minnesota v. Carter*, 525 U.S. 83, 87–88 (1998).

reasonable. *United States v. Figueroa-Espana*, 511 F.3d 696, 704 (7th Cir. 2007). The burden is on the defendant to establish that he has a protected Fourth Amendment interest in the vehicle. *Id*.

As a mere backseat passenger in a car—which turned out to be a rental car that could only lawfully be driven by Sanjuana Tijerina—Mr. Fowler had no legitimate expectation of privacy regarding the evidence found in the car. This is true even if he put his bags in the trunk and planned to be gone for the weekend, especially where Mr. Fowler disclaimed that the blue satchel and its contents belonged to him. *See Torres*, 32 F.3d at 230 ("rather than attempting to assert a legitimate expectation of privacy, at the suppression hearing [defendant] attempted to establish that he had no connection or relation to the trailer or marijuana, and that he was but a mere passenger on the trip from McAllen, Texas, to East Chicago, Indiana."). Therefore, the Court finds that Mr. Fowler lacks standing to contest the search of the car. *See United States v. Wilbourn*, 799 F.3d 900, 908 (7th Cir. 2015) ("because [defendant] was a passenger with no possessory interest in the car, he must demonstrate that the stop itself was not justified and that the evidence obtained was derived from an illegal stop (in contrast to an illegal search after a proper stop, which he would lack standing to challenge).").

### III. CONCLUSION

For those reasons, the Court DENIES the motion to suppress [DE 29].[6]

---

[6] Because the motion to suppress is denied on the merits, the government's argument that the motion ought to be denied because it was untimely filed is essentially mooted. Having said that, the Court notes that current defense counsel, Mr. Skodinski, did not enter his appearance until after the pretrial motion deadline passed. Mr. Skodinski then sought and received a continuance of the trial because he needed more time to review the discovery and discuss trial strategy with Mr. Fowler. Less than two months later, Mr. Skodinski filed the motion to suppress. Thus, good cause exists to excuse the delay in filing the motion given that Mr. Skodinski entered his appearance after the deadline lapsed and needed more time to sufficiently review the evidence. *See* Fed. R. Crim. P. 12(c).

SO ORDERED.

ENTERED: February 20, 2019

                                              /s/ JON E. DEGUILIO  
                                        Judge  
                                        United States District Court